# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2021

_____

Richard Osborne; Jerome Sammon,      *
    *

    Plaintiffs - Appellants,      *
    *

    v.      *     Appeal from the United States
    *     District Court for the

Arlyn Grussing, in his individual     *     District of Minnesota.
capacity and in his official capacity as     *
Director of the Rice County Department *
of Planning and Zoning, et al.,     *
    *

    Defendants - Appellees.      *

_____

Submitted: November 15, 2006
Filed: February 26, 2007

_____

Before LOKEN, Chief Judge, LAY[*] and MELLOY, Circuit Judges.

_____

LOKEN, Chief Judge.

Richard Osborne and Jerome Sammon own residential property on Circle Lake in Rice County, Minnesota. They commenced this § 1983 suit against Rice County and four County officials, alleging that defendants were selectively enforcing provisions of the Rice County Zoning Ordinance in retaliation for plaintiffs' public

_____

[*]The HONORABLE DONALD P. LAY assumed permanent disability retirement status on January 3, 2007. This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. R. 47E.

criticism of the County's lax enforcement of environmental and zoning regulations against a substantial Circle Lake housing development. After the County was dismissed by stipulation, the remaining parties filed cross motions for summary judgment. The district court[1] granted defendants summary judgment. Osborne and Sammon appeal. We affirm.

## I.

In early 2004, Osborne and Sammon repeatedly criticized the Rice County Planning Commission (the "Commission") and the Rice County Planning and Zoning Office ("P&Z") for failing to enforce environmental and zoning regulations against a lakeshore housing project being developed by local businessmen Jerry Anderson and Dan Wenstrom. In early July, Melissa Bokman, a P&Z environmental planner, and employees of the state Department of Natural Resources (DNR) investigated formal complaints by Anderson and Wenstrom that Osborne and Sammon had each violated environmental regulations and county ordinances two to three years earlier when Osborne installed rock fill ("rip-rap") along his shoreline and Sammon built a retaining wall within the "shore impact zone" of his property. The investigators concluded that Osborne and Sammon each used more than ten cubic yards of fill for his project and therefore violated the ordinance requiring a grading and filling permit. See Rice County, Minn., Zoning Ordinance § 506.11(B)(3)(a). DNR and P&Z staff agreed that Rice County would "take the lead on resolving both violations."

When notified of the alleged violations, Osborne and Sammon applied for "after-the-fact" conditional use permits for their shoreline improvements. The Commission took up the applications as separate agenda items at its meeting on October 7, 2004. A transcript of that meeting is part of the summary judgment record

---

[1] The HONORABLE JOHN R. TUNHEIM, United States District Judge for the District of Minnesota.

-2-

on appeal. When Osborne spoke, Commission Chairman Ross Nelson said, "You're a lawyer; and you didn't know a permit was required for this work," "You have a higher obligation to know the law," and "Shame on you for seeking a permit two and a half years after the fact." Commissioner Jim Brown said it was "ironic" and "insulting" for Osborne to have criticized P&Z while violating the zoning ordinances himself. Osborne accused the Commission and P&Z of selectively enforcing the ordinance in retaliation for his on-going criticism. The Commissioners insisted they were treating Osborne the same way they treated others.

When Sammon spoke, he objected to removing his retaining wall, as the current ordinance requires, because the ordinance in effect when he built his wall without the required permit did not ban retaining walls. The Commissioners responded that, having initially failed to comply with the zoning ordinance, Sammon must comply with the ordinance in effect when he applied for an after-the-fact permit. One Commissioner commented, "Mr. Osborne says we're not enforcing things in the ordinance. Maybe we're starting to enforce the things in the ordinance."

After lengthy discussions with both Osborne and Sammon, the Commission adopted the recommendations of P&Z staff and granted Osborne and Sammon after-the-fact permits subject to numerous costly conditions, including the likely removal of Osborne's rip-rap and the mandatory removal of Sammon's retaining wall. Rather than complying with these conditions or challenging the County's actions in state court, Osborne and Sammon filed this § 1983 action seeking damages and injunctive relief for defendants' alleged retaliation against plaintiffs' First Amendment-protected criticism of the Commission and the P&Z. The district court granted the individual defendants summary judgment on the ground that Osborne and Sammon "have failed to set forth facts showing a causal connection between their protected First Amendment activity and the County's investigation and enforcement of environmental regulations."

## II.

It is well-settled that "as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions . . . on the basis of his constitutionally protected speech." Hartman v. Moore, 126 S. Ct. 1695, 1701 (2006) (citation and quotation omitted). To prevail in an action for First Amendment retaliation, "plaintiff must show a causal connection between a defendant's retaliatory animus and [plaintiff's] subsequent injury." Id. at 1703. In this case, it is clear that Osborne and Sammon engaged in First Amendment-protected activity when they publicly criticized the County's enforcement practices, and that regulatory actions forcing them to obtain costly after-the-fact grading and filling permits were sufficient injury to support a First Amendment retaliation claim.[2] Thus, as the district court recognized, the crucial summary judgment issue is whether Osborne and Sammon made a sufficient showing of causation.

Osborne and Sammon concede that the alleged retaliatory injury -- the costs of complying with after-the-fact permit conditions -- result from their earlier violations of the Rice County Zoning Ordinance in installing rip-rap and building a retaining wall without the required grading and filling permits. This complicates the causation

---

[2]Osborne and Sammon further allege that they were embarrassed by the verbal tongue-lashings they received at the October 2004 Planning Commission meeting. These remarks are of course relevant in assessing defendants' motives for taking enforcement action. But the remarks themselves were not actionable injury because they would not "deter a person of ordinary firmness from continuing to speak out." Naucke v. City of Park Hills, 284 F.3d 923, 928 (8th Cir. 2002); see Carroll v. Pfeffer, 262 F.3d 847, 850 (8th Cir. 2001), cert. denied 536 U.S. 907 (2002). Plaintiffs' assertions that other after-the-fact permit applicants received a friendlier reception at the June 17, 2004, Commission meeting are inadmissible hearsay. See Herr v. Airborne Freight Corp., 130 F.3d 359, 361 n.4 (8th Cir. 1997).

inquiry.  As the Supreme Court explained in <u>Mt. Healthy City School Dist. v. Doyle</u>, 429 U.S. 274, 285 (1977):

> A rule of causation which focuses solely on whether protected conduct played a part, "substantial" or otherwise, in a decision [to enforce a regulatory ordinance] could place [the violator] in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing.

Accordingly, the Court held in <u>Mt. Healthy</u> that plaintiff, a school teacher, could not recover by proving that his First Amendment-protected telephone call to a local radio station played a "substantial part" in the defendant school board's decision not to renew his contract, if the school board then proved "by a preponderance of the evidence that it would have reached the same decision . . . even in the absence of the protected conduct." <u>Id.</u> at 287.  As the Court has recently explained, this is a but-for causation standard.  "If there is a finding that retaliation was not the but-for cause of the discharge, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind."  <u>Hartman</u>, 126 S. Ct. at 1704.

This case does not involve a public employee seeking to reverse an adverse employment action.  We deal here with retaliation claims by citizens seeking to avoid the consequences of their illegal actions.  In a regulatory enforcement situation, the government has an even stronger interest in not putting the violator "in a better position as a result of the exercise of constitutionally protected conduct," so it is not surprising that later cases point toward a stricter causation requirement in this context than the burden-shifting standard adopted by <u>Mt. Healthy</u> in the public employment context.  For example, the Supreme Court held in <u>Hartman</u> that, when the alleged retaliatory injury is a criminal prosecution, proof that the prosecutor lacked probable cause to commence the prosecution is an affirmative element of the plaintiff's case.  126 S. Ct. at 1706-07.  Similarly, we have repeatedly held that a prisoner fails to state

a claim for retaliatory discipline "when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform," *i.e.*, for violations of prison rules. Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993) (quotation omitted), cert. denied, 512 U.S. 1209 (1994).

Recognizing that we must craft a causation standard "with details specific to" this type of case, Hartman, 126 S. Ct. at 1703, we conclude that a plaintiff who seeks relief from valid adverse regulatory action on the ground that it was unconstitutional retaliation for First Amendment-protected speech must make the same showing that is required to establish a claim of selective prosecution -- "that he has been singled out for prosecution while others similarly situated have not been prosecuted for conduct similar to that for which he was prosecuted [and] that the government's discriminatory selection of him for prosecution was based upon . . . his exercise of his first amendment right to free speech." United States v. Catlett, 584 F.2d 864, 866 (8th Cir. 1978), citing United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir. 1974).

Applying this standard, we agree with the district court that Osborne and Sammon failed to show that the Commission and P&Z staff selectively enforced the Rice County Zoning Ordinance. It is undisputed that, due to inadequate resources, P&Z staff investigate violations of the ordinance only when a citizen files a complaint against a particular landowner. Though acknowledging formal complaints were filed against them, Osborne and Sammon note the complaints were filed by Anderson and Wenstrom, developers with a motive to retaliate because Osborne and Sammon had publicly opposed the developers' housing project. But regulatory and law enforcement agencies routinely act on the basis of information provided by private parties who harbor a grudge or who hope to benefit personally from their complaints, such as jealous competitors, disgruntled former employees, confidential informants, and cooperating co-conspirators. When such a complaint results in enforcement action, we do not impute the complainant's ulterior motive to the government enforcers. Thus, absent proof that one or more defendants induced Anderson and

Wenstrom to file complaints in order to camouflage a governmental intent to retaliate, the source of the accurate complaints that Osborne and Sammon were violating the ordinance is irrelevant.[3]

Osborne and Sammon also complained that they were the first Circle Lake landowners to be cited for installing rip-rap or building a retaining wall without a grading and filling permit. At the October 2004 hearing, the Commissioners responded that similar after-the-fact permit requirements had been imposed on landowners at other Rice County lakes. Osborne and Sammon submitted no summary judgment evidence to the contrary. To support his after-the-fact permit application, Osborne submitted photographs of rip-rap installed by other Circle Lake landowners. When he complained of selective enforcement at the October 2004 hearing, the Commissioners asked whether he had filed the photos as complaints. Osborne said, "I hadn't at the time. But if you want me to, then I'll file them as a complaint right now." Plaintiffs did not dispute defendants' summary judgment affidavits averring that Osborne's complaints were then investigated.

Nor is there evidence that defendants enforced after-the-fact grading and filling permit requirements more harshly because Osborne and Sammon engaged in First Amendment-protected activity. At the October 2004 hearing, when Osborne complained of selective enforcement, P&Z staff and the Commissioners explained that the same conditions had been imposed on other after-the-fact permit applicants, and that one condition was based upon DNR shoreline restoration requirements. The

---

[3]In the district court, defendants submitted affidavits by Anderson and Wenstrom declaring that they filed the complaints on their own initiative. Osborne and Sammon complain that the district court granted summary judgment before they could conduct discovery on whether there was collusion between defendants and these complainants. But plaintiffs filed a cross motion for summary judgment and never filed a Rule 56(f) motion asking for a continuance to permit additional discovery. Thus, the discovery issue was not properly preserved.

Commissioners also noted a letter from the DNR advising that if Rice County did not require removal of Sammon's retaining wall, "then the DNR will." In responding to defendants' motion for summary judgment, Osborne and Sammon failed to refute this concrete evidence of equal, non-discriminatory enforcement action.

Thus, the summary judgment record establishes that this case is a polar opposite of Garcia v. City of Trenton, 348 F.3d 726 (8th Cir. 2003), which Osborne and Sammon cite as "strikingly similar." In Garcia, the city had a policy of only enforcing parking restrictions in response to citizen complaints. Despite the absence of such complaints, the mayor issued a shopowner multiple parking tickets after she complained about the failure to enforce an unrelated ordinance. The proof of improper retaliation was clear; the issue in Garcia was whether $35 in parking tickets was sufficient injury to deter a person of ordinary firmness from continuing to speak out. Here, by contrast, defendants' enforcement actions were consistent with their policy of only investigating citizen complaints, and Osborne and Sammon presented no evidence that defendants failed to investigate similar complaints or to take similar enforcement actions against other Rice County landowners.

We review a grant of summary judgment de novo, taking the record in the light most favorable to the non-moving parties. See Revels v. Vincenz, 382 F.3d 870, 874 (8th Cir. 2004), cert. denied 126 S. Ct. 371 (2005). In their motion for summary judgment, defendants presented uncontradicted evidence that Rice County only investigates zoning ordinance violations when a formal complaint is filed; that all formal complaints are investigated; that formal complaints were filed against Osborne and Sammon by private citizens acting on their own initiative; that P&Z staff and the DNR investigated and found permit violations; and that the Commission after a hearing approved after-the-fact permit applications subject to costly but non-discriminatory conditions. In response, Osborne and Sammon failed to present probative evidence that defendants have not enforced the zoning ordinance in the

same manner against other similarly situated landowners.  Therefore, summary judgment was properly granted.  The judgment of the district court is affirmed.

_____