# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2130

_____

| | | |
|---|---|---|
| Charles E. Williams, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| City of Carl Junction, Missouri; | * | |
| James "Jim" Wisdom, Mayor, City of | * | Appeal from the United States |
| Carl Junction, In his individual and | * | District Court for the |
| official capacities; John Hofer, | * | Western District of Missouri. |
| Chief of Police, City of Carl Junction, | * | |
| In his individual and official | * | |
| capacities; Joseph "Joe" Barfield, | * | |
| City Administrator, City of Carl | * | |
| Junction, In his individual and official | * | |
| capacities, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: November 15, 2006
Filed: March 28, 2007

_____

Before GRUENDER, JOHN R. GIBSON, and BOWMAN, Circuit Judge.

_____

BOWMAN, Circuit Judge.

Charles Williams brought this 42 U.S.C. § 1983 action against the City of Carl Junction, Missouri, (the "City") and against the City's Mayor, Administrator, and

Police Chief, in both their official and individual capacities. Williams asserted that the individual defendants violated his First Amendment rights by issuing him citations for municipal-ordinance violations in retaliation for his vocal opposition to the City's policies and administration. Williams also asserted that the City maintained a custom and practice of condoning the individual defendants' unconstitutional conduct. The District Court[1] granted all defendants' motions for summary judgment and dismissed the case. Williams appeals. We affirm.

We review a grant of summary judgment de novo, applying the same standards as the district court. Schwan's IP, LLC v. Kraft Pizza Co., 460 F.3d 971, 973 (8th Cir. 2006). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). While a court must view the evidence "in the light most favorable to the nonmoving party" when ruling on a motion for summary judgment, the nonmoving party "must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." FDIC v. Bell, 106 F.3d 258, 263 (8th Cir. 1997) (citations and quotations omitted). The nonmoving party is entitled to all reasonable inferences that may be drawn from the evidence but not to inferences that may only be drawn by "resort[ing] to speculation." P.H. v. Sch. Dist. of Kansas City, Missouri, 265 F.3d 653, 658 (8th Cir. 2001). We recite the relevant facts with these standards in mind.

Charles Williams, a resident of the City, is a self-described "vociferous critic" of the City and an "acknowledged pain in the neck to the City, its officials, and employees." Appellant's Br. at 5, 6. According to Williams, he frequently attended City Council meetings and complained about numerous civic issues, including the City's trash-collection contract, its annexation of various properties, its business-

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

licensing policies and practices, its participation in the Rails-for-Trails initiative, and its enforcement of parking restrictions. In addition, Williams often expressed his displeasure with the City's administration by yelling profanities and making obscene gestures to employees and officials of the City, including the individual defendants. Williams contends that his relationship with the Mayor was particularly contentious and became even more so after Williams purchased real estate that he believes the Mayor was also interested in purchasing.

Beginning in July 2002 and continuing for roughly two years, Williams was issued a total of twenty-six municipal citations: twelve citations for failing to obtain a business license, five citations for parking offenses, two citations for solid-waste infractions, one citation for failing to post house numbers, one citation for failing to yield to an emergency vehicle, one citation for disturbing the peace, one citation for telephone harassment, one citation for overgrown grass and weeds, one citation for violating set-back regulations, and one citation for improperly storing construction materials. The record reflects that during the relevant period, many other residents of the City were issued citations for similar unlawful conduct. According to Williams, the individual defendants also engaged in a series of "petty harassments" against him, such as delaying the issuance of a business license and imposing an abbreviated time limitation for completion of a construction project. Id. at 6.

Each of the business-license and solid-waste citations were issued by the Police Chief; the remaining citations were issued by other municipal police or code-enforcement officers. The citations for telephone harassment and disturbing the peace were issued after police officers investigated complaints filed against Williams by two residents of the City. With respect to all but one of the twenty-six municipal citations, Williams either admitted that he engaged in the unlawful conduct that triggered issuance of the citation or admitted that a police or code-enforcement officer conducted an investigation prior to issuing the citation. Although Williams's attendance at City Council meetings may have become less frequent over the period

these citations were issued, Williams nevertheless continued to attend the meetings and express his point of view, and he continued to voice his opinions to various employees and officials of the City in other venues.

On June 21, 2004, Williams filed a complaint under 42 U.S.C. § 1983, claiming that the individual defendants conspired to issue and issued the citations described above in retaliation for Williams's exercise of his First Amendment rights, thereby causing him to refrain from expressing his opinions or criticizing the City's policies and administration. Williams also asserted a § 1983 claim against the City, alleging a widespread custom or practice of the unconstitutional conduct that caused the deprivation of his rights. All the defendants filed motions for summary judgment, which the District Court granted. According to the court, Williams's claims against the individual defendants failed because Williams had not presented facts sufficient to prove that the individual defendants were motivated by retaliatory animus or issued the citations to Williams without probable cause. Because Williams failed to establish that the individual defendants deprived him of his constitutional rights, his claims against the City necessarily failed. Williams appeals, arguing that the District Court erred in granting the defendants' motions for summary judgment.

The criticism of public officials lies at the heart of speech protected by the First Amendment, New York Times Co. v. Sullivan, 376 U.S. 254, 269–70 (1964), and we have recognized that "[r]etaliation by a government actor in response to such an exercise of First Amendment rights forms a basis for § 1983 liability," Naucke v. City of Park Hills, 284 F.3d 923, 927 (8th Cir. 2002). The parties agree that Williams was engaged in constitutionally protected activity when he criticized City policies and administration. See Sullivan, 376 U.S. at 270 (recognizing "a profound national commitment" to First Amendment principles encouraging debate on public issues that is "uninhibited, robust, and wide open"). They do not agree, however, that the citations Williams received were issued in retaliation for Williams's constitutionally protected activity. Williams asserts that the sheer number and pettiness of the

citations is sufficient to establish that the individual defendants were motivated by retaliatory animus.  The individual defendants, on the other hand, contend that their only motivation in issuing the citations was to enforce municipal ordinances, not to retaliate against Williams.  Moreover, they argue that the citations were supported by probable cause and that Williams therefore cannot prevail on his retaliatory-prosecution claim.

One week after the District Court's order granting summary judgment in this case, the Supreme Court issued its decision in Hartman v. Moore, 126 S. Ct. 1695 (2006).  Resolving a split among the circuits, the Supreme Court held that a plaintiff asserting a Bivens[2] or a § 1983 claim that he was prosecuted for exercising his First Amendment rights must plead and prove a lack of probable cause for the underlying charge in order to sustain his First Amendment retaliation claim.  126 S. Ct. at 1707.  In Hartman, Postal Service inspectors investigated a corporation and its chief executive for alleged involvement in a kickback scandal and urged a federal prosecutor to bring criminal charges.  After a district court acquitted on the basis of a complete lack of evidence, the chief executive filed a Bivens action against the inspectors claiming that they engineered the prosecution in retaliation for the executive's efforts to lobby Postal Service administrators on his company's behalf.

The Court explained that in a retaliatory-prosecution case (as opposed to an ordinary retaliation case), the issue of causation is complicated by the fact that "a plaintiff . . . must show that the nonprosecuting official acted in retaliation, and must also show that he induced the prosecutor to bring charges that would not have been initiated without his urging."  Id. at 1705.  Stated another way, "the causal connection required [in a retaliatory-prosecution action] is not merely between the retaliatory animus of one person and that person's own injurious action, but between the

---

[2]Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  In general, "a Bivens action is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983."  Hartman, 126 S. Ct. at 1700 n.2.

retaliatory animus of one person and the actions of another." Id. According to the Court, therefore, the existence of probable cause in a retaliatory-prosecution case necessarily has "powerful evidentiary significance," because an absence of probable cause tends to suggest that retaliatory animus motivated the prosecution, while the presence of probable cause tends to suggest that the prosecution would have occurred even without the retaliatory motive. Id. at 1703. The Court ultimately concluded that "[b]ecause showing an absence of probable cause will have high probative force, and can be made mandatory with little or no added cost, it makes sense to require such a showing as an element of a plaintiff's case, and we hold that it must be pleaded and proven." Id. at 1707.

In Barnes v. Wright, 449 F.3d 709 (6th Cir. 2006), the Sixth Circuit applied the rule announced in Hartman. In Barnes, the plaintiff confronted two conservation officers, brandished a weapon, and complained vehemently about the officers' inability or unwillingness to control the plaintiff's rowdy neighbors. Thereafter, the officers approached county attorneys to obtain an arrest warrant for the plaintiff. After discussions with county attorneys, it was decided that an arrest warrant would not be immediately issued. The officers, however, initiated grand jury proceedings against the plaintiff. The officers testified at the proceedings, and the grand jury issued a three-count indictment against the plaintiff, leading to the plaintiff's arrest. The plaintiff then filed a complaint against the officers, asserting that they sought his indictment and arrest in retaliation for his constitutionally protected criticism of the officers' job performance.

The Sixth Circuit concluded that although the factual situation was dissimilar to that presented in Hartman—chiefly because the officers, rather than a prosecutor, initiated the grand jury proceedings against the plaintiff in Barnes—the principles announced in Hartman nevertheless applied. 449 F.3d at 720. The Sixth Circuit acknowledged that the Hartman Court's "concerns regarding the intervening actions of a prosecutor [did] not apply," Barnes, 449 F.3d at 720, but it concluded that the

Hartman Court "appear[ed] to acknowledge that its rule sweeps broadly; the Court noted that causation in retaliatory-prosecution cases is '*usually* more complex than it is in other retaliation cases.'" Id. (quoting Hartman, 126 S. Ct. at 1704) (emphasis in Barnes). Because the plaintiff could not establish that the conservation officers lacked probable cause to indict and arrest him as required by Hartman, the plaintiff's First Amendment retaliation claim failed as a matter of law. Id.

We agree with the Sixth Circuit that the Supreme Court's holding in Hartman is broad enough to apply even where intervening actions by a prosecutor are not present, and we conclude that the Hartman rule applies in this case.[3] Williams appears to be arguing that the Mayor harbored retaliatory animus against him and induced the Police Chief and the City Administrator either to personally issue citations to Williams or to cause other police or code-enforcement officers to issue the citations. According to Williams, then, each resulting "prosecution"—initiated by the issuance of the citation—was based on the Mayor's, not the issuing officer's, alleged retaliatory motive. Thus, even without the intervening actions of an individual denominated "prosecutor," the issue of causation in this case raises the same complications as those described in Hartman: Williams must show not only that the Mayor harbored retaliatory animus against him as a result of his protected speech and thus sought to induce prosecution through the issuance of the citations, but also that the Mayor succeeded—that is, that the issuance of the citations would not have occurred without the Mayor's improper motive. As explained in Hartman, the absence of probable cause would serve to "bridge the gap" in these circumstances between the Mayor's retaliatory animus and the officers' "prosecution." Hartman, 126 S. Ct. at 1706. Conversely, the presence of probable cause would necessarily eliminate the possibility that a causal link between the Mayor's retaliatory animus and the officers' "prosecution" could be established. Id.

_____

[3]At oral argument, Williams conceded that if the Hartman rule applies in this case, his appeal would fail. We agree, but nevertheless will proceed in this opinion to explain precisely why.

-7-

For all but one of the twenty-six citations Williams has identified, he has failed to establish even an arguable absence of probable cause. Probable cause exists if at the moment the officer issued the citation, "'the facts and circumstances within [the officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing'" that Williams had violated a municipal ordinance. Hunter v. Bryant, 502 U.S. 224, 228 (1991) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). With respect to twenty-five of the twenty-six citations, Williams either admits to the conduct that led to the issuance of the citation or admits that a police or code-enforcement officer investigated his behavior and personally observed him engaging in the conduct before issuing the citation. The District Court recited the details surrounding the issuance of these twenty-five citations and concluded that each was supported by probable cause. Williams does not identify on appeal any specific error committed by the District Court in reaching this determination, and we find none. Because Williams has failed to show that the police and code-enforcement officers lacked probable cause to issue these citations, he cannot establish a necessary element of his retaliatory-prosecution claim. Accordingly, with respect to these citations, Williams's First Amendment retaliation and related conspiracy claims fail. Hartman, 126 S. Ct. at 1707; Barnes, 449 F.3d at 720.[4]

We turn next to the remaining citation to determine whether the circumstances surrounding its issuance support Williams's retaliatory-prosecution claims. In November 2003, after two of the City's police officers completed a stop of Williams's son for a traffic violation, one of the officers observed Williams's vehicle following his police car for several blocks. The officer turned his police car around, pulled

---

[4]Williams asserts that because none of these citations led to a "conviction," the citations must have been issued on the basis of the Mayor's retaliatory animus. This argument misses the mark set by the Supreme Court in Hartman. Application of Hartman to defeat a plaintiff's claim does not require that a charge lead to a conviction, but merely that the charge be supported by probable cause.

behind Williams, activated his emergency lights, and pulled Williams's vehicle over. The officer initially informed Williams that Williams would be arrested for stalking a police officer, but after consulting with the Police Chief, the officer instead cited Williams for failing to yield to an emergency vehicle. Williams admitted that he was following the officer, but asserted that this was simply a coincidence.

A City ordinance requires motorists to yield "[u]pon the immediate *approach* of an authorized emergency vehicle." Carl Junction City Code § 310.070 (emphasis added). Viewing the evidence in the light most favorable to Williams, it does not appear that the officer had probable cause to cite Williams for failure to yield because Williams was not *approaching* the police vehicle, he was *following* it. But even if the officer lacked probable cause to cite Williams for this conduct, Williams's retaliatory-prosecution claim fails. Once Williams clears the absence-of-probable-cause hurdle, he still must satisfy the remaining elements of his § 1983 retaliatory-prosecution claim. Williams must show that the government official's adverse action was motivated in part by Williams's exercise of his constitutional rights, and Williams must show that the official's adverse action caused him to suffer an injury that would "chill a person of ordinary firmness" from continuing in the protected activity. Carroll v. Pfeffer, 262 F.3d 847, 850 (8th Cir. 2001) (citations and quotations omitted), cert. denied, 536 U.S. 907 (2002). Williams has presented no evidence that the officer who issued this citation harbored any retaliatory animus against him. See Hartman, 126 S. Ct. at 1704 (noting that "the plaintiff in a retaliatory-prosecution claim must prove the elements of retaliatory animus as the cause of the injury"); Carroll, 262 F.3d at 850 (stating that a plaintiff alleging retaliatory prosecution must prove, inter alia, adverse action "motivated in part by . . . exercise of her constitutional rights" (citations and quotations omitted)). And even if Williams could show that the officer issued this citation in retaliation for Williams's protected speech, Williams has not established that receipt of this citation would "chill a person of ordinary firmness" from continuing to exercise his First Amendment rights to criticize the City. See Naucke, 284 F.3d at 928 (observing that "it would trivialize the First Amendment to hold that

harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise" (citations and quotations omitted)). We conclude that Williams has failed to establish the required elements of his retaliatory-prosecution claim—even assuming he has established the absence of probable cause. Accordingly, Williams's First Amendment retaliation claim with respect to this citation fails.

Because Williams has failed to prove a deprivation of his constitutional rights, his § 1983 claim against the City necessarily fails. See Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (holding that a plaintiff seeking to impose § 1983 liability on a municipality must show an official policy or a widespread custom or practice of unconstitutional conduct that caused the deprivation of the plaintiff's constitutional rights); Robinette v. Jones, 2007 WL 414369, at *3 (8th Cir. Feb. 8, 2007) (noting that "without a direct causal link between" a city's alleged policy or custom of unconstitutional conduct and an "identified constitutional deprivation," a city cannot be held liable under § 1983).

For the foregoing reasons, we affirm the District Court's entry of summary judgment.

_____