# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2404

_____

Ray Scott,

*Plaintiff - Appellee,*

v.

Tobias J. Tempelmeyer, City Attorney,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: November 16, 2016
Filed: August 16, 2017

_____

Before COLLOTON, BEAM, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Ray Scott sued the City of Beatrice, Nebraska, Mayor Dennis Schuster, and City Attorney Tobias Tempelmeyer, claiming violations of his First and Fourth Amendment rights. The district court granted summary judgment for the City and Schuster and partial summary judgment for Tempelmeyer on Scott's Fourth Amendment claim. The court denied Tempelmeyer qualified immunity on Scott's

First Amendment claim alleging that Tempelmeyer retaliated against Scott for exercising his right to free speech. Tempelmeyer appeals the denial of qualified immunity. We conclude that the First Amendment right asserted by Scott—a right to be free from retaliatory regulatory enforcement that is otherwise supported by probable cause—was not clearly established. We therefore reverse the district court's order denying in part Tempelmeyer's motion for summary judgment based on qualified immunity.

I.

Beginning in 2005, Scott was the lessor and operator of the Villa Motel, a two-building motel located in Beatrice, Nebraska, and owned by Wayne Schulz. During his tenure, Scott engaged in a long-running dispute with the City and Tempelmeyer regarding the Motel's failure to pay lodging taxes. In December 2009, Tempelmeyer warned Scott and Schulz by letter that if they did not remit the unpaid lodging taxes by January 8, 2010, the City would take legal action to collect the taxes or prosecute them for zoning violations.

In November 2010, Tempelmeyer received photographs of the Motel's interior and basement from the lessee of an adjacent commercial building. After reviewing the photographs, Tempelmeyer directed Dennis Mitchell, the chief building inspector for the City, to inspect the property for safety issues with Sean Lindgren, the deputy state fire marshal. Mitchell obtained a search warrant from a local judge and inspected the Motel with Lindgren and another city employee.

Lindgren noted several fire code violations and safety hazards; he concluded that the Motel was unfit for occupancy. Lindgren ordered that the Motel correct the deficiencies, or submit and secure approval of a plan of correction, before the Motel could be reoccupied. After the inspection, city building inspector Mitchell sent Scott

and Schulz a letter at Tempelmeyer's direction, identifying the "fire and life safety issues" found during the inspection.

Meanwhile, Mitchell told Tempelmeyer that he did not think the issues were life-threatening or that the Motel should be condemned—*i.e.*, adjudged unfit for occupancy. According to Mitchell, he had never been ordered to condemn a property after he concluded that it did not present life-threatening issues. Tempelmeyer nonetheless told Mitchell to condemn the Motel. The City Code of Beatrice incorporates the International Property Maintenance Code, which provides that an official may give notice of condemnation if he "determines" or "has grounds to believe" that a violation has occurred. Int'l Prop. Maint. Code § 107.1 (Int'l Code Council 2003).

Scott sued the City of Beatrice, Mayor Schuster, and City Attorney Tempelmeyer under 42 U.S.C. § 1983, asserting that the defendants violated his rights under the First and Fourth Amendments, as incorporated through the Fourteenth Amendment. He claimed that the inspection and condemnation were conducted in retaliation for his disputing whether a certain tax was applicable to his business, in violation of the First Amendment. He further alleged the inspection was conducted without a warrant or his permission, contrary to the Fourth Amendment.

The district court granted summary judgment for the City and Mayor Schuster. The court also granted summary judgment for Tempelmeyer on the Fourth Amendment claim, but denied his motion on the First Amendment retaliation claim. The court determined that there was evidence that Tempelmeyer retaliated against Scott for exercising his First Amendment rights by ordering an inspection and condemnation of the Motel. Tempelmeyer appeals the district court's denial of qualified immunity.

We have jurisdiction to review an interlocutory appeal of the denial of qualified immunity under the collateral order doctrine. *Mitchell v. Forsyth*, 472 U.S. 511, 528-30 (1985). Qualified immunity shields a government official from suit when his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Tempelmeyer is entitled to qualified immunity unless the right asserted by Scott was established "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Immunity protects "all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)). We review the district court's ruling on qualified immunity *de novo*.

II.

Scott argues that Tempelmeyer ordered Mitchell to inspect the Villa Motel and to condemn the property in retaliation for Scott's speech about the tax dispute between the City and the Motel. It is settled at a high level of generality that the First Amendment prohibits government officials from retaliating against a citizen for exercising his right of free speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). But to establish a First Amendment retaliation claim in a particular case, a plaintiff must show (1) that he engaged in a protected activity, (2) that the defendant's actions caused an injury to the plaintiffs that would chill a person of ordinary firmness from continuing to engage in the activity, and (3) that a causal connection exists between the retaliatory animus and the injury. *Bernini v. City of St. Paul*, 665 F.3d 997, 1007 (8th Cir. 2012).

In *Osborne v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007), this court crafted a causation standard for the third element in a case involving enforcement of county environmental regulations. The plaintiffs in *Osborne* sought relief from valid adverse regulatory action on the ground that it was unconstitutional retaliation for speech

-4-

protected by the First Amendment. The lawsuit claimed that a county in Minnesota and four county officials retaliated against the plaintiffs for criticizing the county's lax enforcement of regulations. This court said that the plaintiffs

> must make the same showing that is required to establish a claim of selective prosecution—"that he has been singled out for prosecution while others similarly situated have not been prosecuted for conduct similar to that for which he was prosecuted [and] that the government's discriminatory selection of him for prosecution was based upon . . . his exercise of his first amendment right to free speech."

*Id.* (alteration in original) (quoting *United States v. Catlett*, 584 F.2d 864, 866 (8th Cir. 1978)).

Shortly after *Osborne*, however, this court in *Williams v. City of Carl Junction*, 480 F.3d 871 (8th Cir. 2007), elaborated on the causation element of a First Amendment retaliation claim. The court first observed that *Hartman v. Moore* held, in a case brought against investigators alleging retaliatory criminal prosecution, that a plaintiff must show the absence of probable cause supporting the prosecutor's action. 547 U.S. at 263-66. *Hartman* contrasted "the requisite causation in ordinary retaliation claims, where the government agent allegedly harboring the animus is also the individual allegedly taking the adverse action," *id.* at 259, with causation in a case like *Hartman*, where the plaintiff alleged that investigators with retaliatory animus induced a prosecutor to bring charges against the plaintiff. The Court concluded that where the causal connection required was "between the retaliatory animus of one person and the action of another," *id.* at 262, an absence of probable cause for prosecution was required "to bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action." *Id.* at 263.

*Williams* involved a claim that a mayor harbored retaliatory animus against the plaintiff citizen. The plaintiff alleged that the mayor induced the police chief and the

city administrator to issue (or to cause other officers to issue) citations to the plaintiff for violating various municipal ordinances. Some of this activity was regulatory enforcement: citations for violating set-back regulations, for improperly storing construction materials, and for overgrown grass and weeds. 480 F.3d at 874. This court concluded that even where intervening actions by a prosecutor were not present, the rule of *Hartman* should apply. The court reasoned that because the plaintiff claimed that an actor with retaliatory animus (the mayor) induced other actors (police or code-enforcement officers) to take adverse action against the plaintiff, the absence of probable cause would bridge the gap between the two actors and show that retaliatory motive caused the action. *Id.* at 876. Conversely, said the court, "the presence of probable cause would necessarily eliminate the possibility that a causal link between the Mayor's retaliatory animus and the officers' 'prosecution' could be established." *Id.* at 876-77.

*Williams* was later criticized by one judge of this court for extending *Hartman* to "an ordinary retaliation claim, i.e. 'where the government agent allegedly harboring the animus is also the individual allegedly taking the adverse action.'" *Cross v. Mokwa*, 547 F.3d 890, 904 (8th Cir. 2008) (Bye, J., concurring in part, dissenting in part, and concurring in the judgment in part) (quoting *Hartman*, 547 U.S. at 259). It is debatable whether *Williams* extended *Hartman* quite that far: *Williams* appeared to rely on the separation between the alleged retaliatory animus of the mayor and the adverse action taken by police or code-enforcement officers. 480 F.3d at 876. Yet this court in *Smithson v. Aldrich*, 235 F.3d 1058, 1063 (8th Cir. 2000), *Cross*, 547 F.3d at 896-97 (majority opinion), *id.* at 904 (opinion of Bye, J.), *McCabe v. Parker*, 608 F.3d 1068, 1075 (8th Cir. 2010), and *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014), required an absence of probable cause to prove a First Amendment retaliation claim against a law enforcement officer who allegedly both harbored animus and made an arrest based on the animus. In *Reichle v. Howards*, 566 U.S. 658 (2012), the Supreme Court—relying in part on this court's decision in *McCabe*—held

that there was no clearly established right to be free from a retaliatory arrest that is otherwise supported by probable cause. *Id.* at 664-70.

In light of all of this precedent, Scott cannot show a clearly established right to be free from regulatory enforcement that is otherwise supported by probable cause. Scott's claim faces a greater hurdle than those of the plaintiffs in the single-actor arrest cases of *Reichle*, *McCabe*, and *Cross*. Here, Scott alleges that Tempelmeyer induced or directed Mitchell, the building inspector, to enforce the code against the Motel. The case thus presents the scenario addressed in *Williams*, where the actor with alleged retaliatory animus (Tempelmeyer) is different from the actor taking the alleged adverse regulatory action (Mitchell). *Osborne* addressed a claim of retaliatory enforcement of regulations without mentioning the absence of probable cause. But it was reasonably debatable in November 2010 that the reasoning of *Williams* would apply to a claim like Scott's that combined the animus of one actor and the injurious regulatory action of another. It was also not unreasonable to think that the reasoning of subsequent single-actor law enforcement cases such as *Cross* and *McCabe* would apply to a regulatory enforcement case. It was therefore not clearly established at the time of the inspection and condemnation that Scott had a right under the First Amendment to be free from a regulatory enforcement action—directed by Tempelmeyer and implemented by Mitchell—that was supported by probable cause.

Mitchell's condemnation of the Motel was supported by probable cause. Under the Code, a structure must be condemned when it is "found by the code official to be unsafe, or when [it] is found unfit for human occupancy, or is found unlawful." Int'l Prop. Maint. Code § 108.1. A structure is "unfit for human occupancy" when, among other things, it is insanitary, contains filth and contamination, or lacks maintenance. *Id.* § 108.1.3. The pictures submitted to Tempelmeyer showed insanitary conditions, filth, and contamination. Both Mitchell and Lindgren, the deputy state fire marshal, found numerous fire code violations and safety hazards at the Motel, including open

gas piping, black mold, and improper maintenance of the mechanical, electrical, and plumbing systems. Lindgren concluded that the Motel was not approved for human occupancy, and the record amply supports that conclusion.

Because there was probable cause to support Mitchell's regulatory enforcement action against the Motel, Tempelmeyer is entitled to qualified immunity on Scott's First Amendment retaliation claim. The district court's order denying in part Tempelmeyer's motion for summary judgment based on qualified immunity is reversed.

_____