# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-1008

_____

Troy K. Scheffler

*Plaintiff - Appellant*

v.

Jack Molin, in his individual capacity acting under color of law as Building
Inspector and employee of the City of Crystal, MN

*Defendant - Appellee*

City of Crystal, a political subdivision of the state of Minnesota

*Defendant*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: December 17, 2013
Filed: February 25, 2014

_____

Before WOLLMAN, LOKEN, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

After an altercation with Crystal City building inspector Jack Molin, Troy
Scheffler brought suit under 42 U.S.C. § 1983 against Molin, alleging violations of

his First Amendment rights. Scheffler also brought a defamation claim against Molin and the city, which is not before us on appeal. Both parties moved for summary judgment. Molin argued that Scheffler's constitutional rights had not been violated and that, regardless, the defense of qualified immunity applied. The district court[1] denied Scheffler's motion, granted summary judgment to Molin and the city, and dismissed Scheffler's suit with prejudice. With jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

On October 3, 2008, Scheffler went to Crystal City Hall to inquire about a recent stop-work order issued by Molin on the property of Scheffler's friend Brandon Bohn. With little preliminary conversation, Molin yelled at Scheffler, called him a "criminal," and accused him of living at the property unlawfully. After Scheffler urged Molin to calm down, Molin walked into the lobby from behind the customer service desk and effectively escorted Scheffler to the door, placing his hand on Scheffler's shoulder but with no apparent physical force.

Scheffler quickly returned and requested from Jenny Gooden, a city employee at the building inspection office, a form on which he could file a complaint against Molin. Before she could reply, Molin approached and asked Scheffler why he had returned. When Scheffler told him, Molin instructed Gooden to call the police. Scheffler responded that all he wanted was a complaint form, and he left after Gooden gave him the contact information for Patrick Peters, Molin's supervisor, and told Scheffler that Peters could help him. All employees present believed that Molin was acting inappropriately.

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

Scheffler went down the hall to the police station, where he told Sergeant Holm that the police might receive a call about his involvement in disorderly conduct. After Scheffler explained what had happened with Molin, Sergeant Holm asked Scheffler to wait while he investigated. Fifteen minutes later, Sergeant Holm returned, gave Scheffler another business card for Peters, and told Scheffler that Peters was interested in Scheffler filing a complaint against Molin. Scheffler later called the city to file such a complaint, and the city subsequently disciplined Molin.

## II. Discussion

We review de novo the district court's grant of summary judgment, finding such an order appropriate if there exists no genuine issue as to any material fact such that Molin is entitled to judgment as a matter of law. See Naucke v. City of Park Hills, 284 F.3d 923, 927 (8th Cir. 2002). When the defense of qualified immunity has been asserted, we evaluate both whether the defendant violated the plaintiff's constitutional rights and whether those rights were clearly established. Chambers v. Pennycook, 641 F.3d 898, 904 (8th Cir. 2011). If there is no constitutional violation, however, we need not proceed further. Riehm v. Engelking, 538 F.3d 952, 962 (8th Cir. 2008).

Scheffler argues that by instructing Gooden to call the police, Molin retaliated against him when he was attempting to exercise his First Amendment right of speech and his right to petition the government for redress of grievances.[2] To prevail on his First Amendment retaliation claim, Scheffler must show (1) that he engaged in a

[2]In his reply brief on appeal, Scheffler also argues that Molin's conduct was an unconstitutional, content-based restriction on his right of expression in a limited public forum. Since he did not raise this claim at the district court, however, we need not consider it here. See Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (citing "our general rule that claims not presented in the district court may not be advanced for the first time on appeal").

constitutionally protected activity; (2) that the defendant took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated in part by Scheffler's exercise of his constitutional rights. Naucke, 284 F.3d at 927–28. This is an objective test: "[t]he question is not whether the plaintiff [him]self was deterred, though how plaintiff acted might be evidence of what a reasonable person would have done." Garcia v. City of Trenton, 348 F.3d 726, 729 (8th Cir. 2003). Molin does not dispute that Scheffler was engaging in a protected activity. Finding that Molin's conduct was not sufficient to meet the second prong of the test, the district court did not address the third. We therefore focus on the question of whether Molin's actions would chill a person of ordinary firmness from continuing to petition and speak.

In Garcia v. City of Trenton, we evaluated a plaintiff's claim of First Amendment retaliation by the mayor of her city. Garcia spoke with the mayor on numerous occasions in an attempt to get a city ordinance enforced against people who unlawfully rode their bicycles in front of her shop. Garcia herself regularly parked her car outside her shop, in violation of a two-hour time limit ordinance that was not enforced unless someone complained. During a "heated exchange," the mayor told Garcia that the two-hour parking limit would be enforced against her "because of her complaints about the bicycling ordinance." Garcia, 348 F.3d at 728. She received her first ticket an hour later and three others soon thereafter, in sharp contrast to her neighbor who also parked in violation of the two-hour limit. We asked whether the plaintiff would "have simply ignored the [tickets], or would he or she have been slowed down, at least to some degree?" Id. at 729. Finding that a person of ordinary firmness in Garcia's situation would have been chilled from further speech, we relied in part on the fact that the defendant's actions "went beyond mere speech, however offensive." Id. The defendant, "in his capacity as Mayor, engaged the punitive machinery of government in order to punish Ms. Garcia for her speaking out." Id. Although parking ticket charges "are typically only petty offenses, not even misdemeanors, . . . they have concrete consequences." Id.

-4-

We distinguished Garcia's claim from that of the plaintiff in Naucke v. City of Park Hills. Naucke experienced multiple instances of embarrassment, which she attributed to the city administrator—including conducting a public audit of an organization she ran, publicly scolding her at city council meetings, publicly calling her names, and circulating false information about her family—but the conduct was still not "sufficiently egregious" to meet the second prong of the test. 284 F.3d at 928. We acknowledged that "embarrassment, humiliation and emotional distress may be sufficient" for a First Amendment retaliation claim, but the consequences to Naucke in particular would not chill someone of ordinary firmness from continued speech. Id. Naucke did, in fact, continue to speak out against the city administrator involved.

We do not doubt that Scheffler's experience with Molin was quite unpleasant, particularly given Molin's position of trust as a city official; nor do we condone Molin's treatment of him. However, the actions ascribed to the city administrator in Naucke—which did not inflict constitutional injury—were far more severe and persistent than the single instance of misconduct involved here. Unlike the plaintiff in Garcia, who did prevail on her claim, Scheffler did not experience "concrete consequences." Moreover, the mayor in Garcia successfully used his power to mobilize city resources against the plaintiff in response to her First Amendment activity. When Sergeant Holm arrived at the building inspection office, he did not take Molin's side or arrest Scheffler; instead, after investigating the situation, he offered Scheffler information to help him further exercise his rights. Molin's instruction to call the police could be deemed a threat of retaliation, which may be an adverse action sufficient to chill a person of ordinary firmness. See Santiago v. Blair, 707 F.3d 984, 992–93 (8th Cir. 2013). But if anything, Molin's statement was a threat that the police would come; what the police would do after that was in their discretion, not Molin's. In this case, the potential chilling effect of Molin's instruction was mitigated by the fact that the other city employees present did not echo Molin's attitude—instead, they also believed Molin was acting inappropriately

-5-

and later vouched for Scheffler to the police. Finally, to the extent that we can rely on Scheffler's actual conduct in our objective inquiry, Scheffler did, in fact, successfully exercise his First Amendment right to file a complaint against Molin. While Molin's conduct was certainly disrespectful, it did not violate Scheffler's First Amendment rights.

## III. Conclusion

We affirm the district court's grant of summary judgment to Molin and the City of Crystal.

_____