# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3688
_____

Lana L. Starkey

*Plaintiff - Appellee*

v.

Amber Enterprises, Inc., a Corporation, doing business as Amber Pharmacy

*Defendant - Appellant*

Hy-Vee, Inc., a Corporation; Mike Agostino, Individually

*Defendant*s

_____

No. 19-3757
_____

Lana L. Starkey

*Plaintiff - Appellant*

v.

Amber Enterprises, Inc., a Corporation, doing business as Amber Pharmacy;
Hy-Vee, Inc., a Corporation; Mike Agostino, Individually

*Defendants - Appellees*
_____

Appeals from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: December 4, 2020
Filed: February 4, 2021

_____

Before BENTON, ERICKSON, and GRASZ, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Lana L. Starkey claims her resignation from Amber Enterprises, Inc., doing business as Amber Pharmacy, ("Amber Pharmacy") was because of discrimination, retaliation, demotion and a hostile work environment. She brought this employment action asserting various federal and state claims against Amber Pharmacy, Hy-Vee, Inc., and Mike Agostino, the President of Amber Pharmacy, (collectively, "defendants") in the District Court of Douglas County, Nebraska ("state court"). The defendants removed the case to federal court and moved for summary judgment. The district court granted summary judgment in favor of the defendants on all but a portion of Starkey's Nebraska Fair Employment Practice Act ("NFEPA") claim, which it remanded to state court. We affirm the grant of summary judgment, but vacate the part of the order related to the NFEPA claim, with directions that the NFEPA claim be remanded to the state court in its entirety.

I.      BACKGROUND

Starkey was employed with Amber Pharmacy, a company in the specialty pharmaceutical industry, from September 2001 until August 2015. Starkey's position changed in May 2014 from Director of Enrollment to Director of Financial Services.

The change in position coincided with the acquisition of Amber Pharmacy by Hy-Vee, Inc., a supermarket chain.

Following the acquisition, Amber Pharmacy's accounting and financial department was found to be "in complete disarray," a situation exacerbated when Amber Pharmacy implemented a new operating system in February 2015. Amber Pharmacy had retained a third-party "implementation consultant" for the new operating system, and, on March 30, 2015, the consultant reported that the biggest obstacle to implementation of the new system was that the financial team was "under staffed," "potentially not the right skill level," and lacked "management in the financial area." The consultant recommended restructuring the financial team. At about the same time as the consultant's report, Starkey reported to others at Amber Pharmacy that Amber Pharmacy was being overpaid by Texas Medicaid; that incorrect billing codes were being used for Texas Medicaid; and that some employees were engaged in email practices that raised concerns about violating the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d–6.

Amber Pharmacy considered various plans for restructuring the financial department, ultimately deciding to eliminate Starkey's position. According to Amber Pharmacy, Agostino made this decision because the company needed to focus on accounting expertise, which Starkey lacked, and because Starkey had struggled to adapt to the new operating system. At meetings held on May 29, 2015, and June 2, 2015, Starkey was informed that her position was being eliminated. Amber Pharmacy offered Starkey a choice of two new positions, each of which were demotions with a substantial reduction in pay. On June 4, 2015, Starkey reluctantly accepted one of the positions but questioned whether her demotion was due to her report of Medicaid and HIPAA issues. Effective August 13, 2015, Starkey, who was then 51 years old, resigned. Starkey did not receive timely notice of her right to elect

temporary continuation of health insurance coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161 et seq.

The district court granted summary judgment on each of Starkey's federal claims, exercised supplemental jurisdiction over the state claims, and granted summary judgment on all state claims, except for a portion of the NFEPA claim. On the NFEPA claim, the court reached a split decision, denying summary judgment on the portion of the claim that Starkey had been retaliated against for reporting Medicaid discrepancies but granting summary judgment on the parts of the claim based on Starkey reporting HIPAA issues and filing charges with the Nebraska Equal Opportunity Commission ("NEOC"). Having reached these conclusions, the court, citing 28 U.S.C. § 1367(c)(3), declined to exercise further supplemental jurisdiction over the NFEPA claim and remanded what remained to the state court.[1]

Amber Pharmacy appeals the district court's partial denial of summary judgment on the NFEPA claim. Starkey appeals the district court's decision on all the claims except for her claim brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., which she abandoned on appeal.

## II.    DISCUSSION

We review the district court's grant of summary judgment *de novo*, "viewing the evidence and drawing all reasonable inferences in the light most favorable to [Starkey], the nonmoving party." Main v. Ozark Health, Inc., 959 F.3d 319, 323 (8th Cir. 2020) (quoting Kirkeberg v. Canadian Pac. Ry., 619 F.3d 898, 903 (8th Cir. 2010)). We affirm where no genuine issue of material fact exists and the

---

[1]As to Starkey's NFEPA claim, the court also found Hy-Vee and Agostino were not proper parties and granted summary judgment in their favor on this claim.

defendants are entitled to judgment as a matter of law. Eggers v. Wells Fargo Bank, N.A., 899 F.3d 629, 632 (8th Cir. 2018) (citations omitted).

## A. Federal Claims

We first consider the district court's grant of summary judgment on Starkey's claim of age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. "To establish age discrimination, a plaintiff must prove by the preponderance of the evidence that age was the but-for cause of the employment decision." Hilde v. City of Eveleth, 777 F.3d 998, 1003 (8th Cir. 2015). Because Starkey does not allege direct evidence of age discrimination, her claim is analyzed under the familiar burden-shifting test in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

To establish a prima facie case, a plaintiff must show she "(1) was at least forty years old, (2) suffered an adverse employment action, (3) was meeting [her] employer's legitimate expectations at the time of the adverse employment action, and (4) was replaced by someone substantially younger." Gibson v. Am. Greetings Corp., 670 F.3d 844, 856 (8th Cir. 2012) (quoting Morgan v. A.G. Edwards & Sons, Inc., 486 F.3d 1034, 1039 (8th Cir. 2007)). If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. If the employer proffers such a reason, the burden shifts back to the plaintiff to show that the proffered "reason was mere pretext for discrimination" and that "age was the 'but-for' cause of the challenged adverse employment action." Id. (quoting Haigh v. Gelita USA, Inc., 632 F.3d 464, 468 (8th Cir. 2011)).

Assuming Starkey established a prima facie case, the defendants articulated a legitimate, nondiscriminatory reason for eliminating Starkey's position and demoting her: the need to restructure the financial department to put a stronger emphasis on

accounting and more effectively implement the new operating system. See Aulick v. Skybridge Ams., Inc., 860 F.3d 613, 621 (8th Cir. 2017) (finding an employer's goal to focus on other areas of expertise to improve its business was a legitimate, nondiscriminatory justification for eliminating an employee's position).  Amber Pharmacy asserted it needed to prioritize accounting in order to address issues arising out of the new operating system.  Starkey admitted that "[a]ccounting is not for [her]."  We will not second guess this business judgment, particularly when it was based, in part, on a third-party consultant's recommendations.  This shifts the burden to Starkey to establish the reasons given by Amber Pharmacy are pretextual and that age was the real reason for her termination.

Starkey's evidence of pretext consisted of identification of Amber Pharmacy employees over the age of forty who were terminated as well as younger employees who absorbed Starkey's job duties following her demotion.  In evaluating this evidence, the district court found Starkey's examples involving older employees did not show pretext because (1) the record was insufficient to assess the circumstances surrounding those employees' terminations; (2) the few facts actually in the record did not show that the other employees were similarly situated to Starkey; and (3) discrimination against the other employees was irrelevant to Starkey's claim.  The district court also found that Starkey failed to show the younger employees were similarly situated.  Having closely examined the record below, we agree that Starkey's evidence was insufficient and did not satisfy her burden of showing age was a motivating factor in the defendants' decision to restructure.

Starkey raised an additional issue for the first time in her reply brief on appeal, claiming the district court misconstrued her claim because her "situation is more akin to a reduction in force or 'restructure' where the employer terminates the older employee and does not replace her because the position no longer exists."  Thus, Starkey argues, the termination of other older employees is relevant "statistical evidence" of pretext.  We do not entertain belated arguments raised for the first time

on appeal in reply briefs. Norwest Bank of N.D., N.A. v. Doth, 159 F.3d 328, 334 (8th Cir. 1998). But even if we considered Starkey's argument, her examples of other coworkers are inadequate to support a discrimination claim in the context of a reduction in force. See Grant v. City of Blytheville, 841 F.3d 767, 775 (8th Cir. 2016) (finding statistical evidence insufficient when it inadequately analyzed the treatment and circumstances of other employees); Chambers v. Metro. Prop. & Cas. Ins. Co., 351 F.3d 848, 856 (8th Cir. 2003) (noting that "statistical evidence is meaningless" absent an analysis of the workforce "before and after the reduction in force"). The defendants are entitled to summary judgment on Starkey's ADEA claim.

Starkey's remaining federal claim alleged a violation of COBRA and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Starkey has pointed to no statutory authority requiring her employer to provide her notice of COBRA benefits within thirty days of termination. She has not cited any case in which a court has imposed penalties on an employer for failing to meet its obligations to notify a plan administrator of a qualifying event. And perhaps most significantly, Starkey has not pointed to any facts showing an interference with her attainment of benefits or that she was prejudiced in any way by the lack of notice. Starkey admitted that she knew about her COBRA rights, that she would not have elected COBRA coverage even if she had received notice, and that she enrolled in her husband's less expensive plan in which she had no out-of-pocket medical expenses that year. The defendants are entitled to summary judgment on Starkey's COBRA and ERISA claim.

### B. State Claims

A district court exercising original jurisdiction over federal claims also has supplemental jurisdiction over state claims which "form part of the same case or controversy" as the federal claims. 28 U.S.C. § 1367(a). In the "usual case" where all federal claims are dismissed on a motion for summary judgment, "the balance of

factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). "We rarely overturn this 'purely discretionary' call." McManemy v. Tierney, 970 F.3d 1034, 1040–41 (8th Cir. 2020) (quoting Crest Constr. II, Inc. V. Doe, 660 F.3d 346, 359 (8th Cir. 2011)). Having had an opportunity to review the parties' additional briefs on the issue of whether the district court abused its discretion in exercising supplemental jurisdiction over the state claims, we find the exercise of supplemental jurisdiction was appropriate as to some of Starkey's claims.

Starkey's age discrimination claim brought under Neb. Rev. Stat. § 48-1001 et seq. ("Nebraska ADEA") is premised on the same grounds as her federal ADEA claim. The district court acted well within its discretion in exercising jurisdiction over the Nebraska ADEA claim because the Nebraska ADEA is so closely patterned after the federal ADEA that Nebraska courts look to federal law when deciding Nebraska ADEA claims. Oldfield v. Neb. Mach. Co., 894 N.W.2d 278, 292 (Neb. 2017). Given the similarities between the federal and state ADEA claim, it was appropriate for the district court to exercise supplemental jurisdiction and grant summary judgment on the Nebraska ADEA claim.

Starkey also alleged the defendants subjected her to unbearable treatment by demoting and then ostracizing her. It is well established under Nebraska law that, to have a cognizable intentional infliction of emotional distress claim, Starkey must allege sufficient facts to show both outrageous conduct and severe emotional distress, which she failed to do. See Heitzman v. Thompson, 705 N.W.2d 426, 430–31 (Neb. 2005) (listing elements and explaining "petty oppressions" are inadequate). Starkey's claim for intentional infliction of emotional distress was neither novel nor complex. Under the circumstances, the exercise of supplemental jurisdiction would not offend principles of comity and fairness. See Thomas v. United Steelworkers Local 1938,

743 F.3d 1134, 1141 (8th Cir. 2014) (finding a district court properly exercised supplemental jurisdiction over a state claim involving "well-settled principles of state law").

Starkey's final state claim alleged a violation of Neb. Rev. Stat. § 48-1101 et seq. ("NFEPA"). She asserted the defendants retaliated against her for reporting Medicaid and HIPAA issues and for engaging in NEOC activity. This claim turns heavily on whether Starkey's activity was "protected conduct" under the statute. McPherson v. City of Scottsbluff, 931 N.W.2d 451, 462 (Neb. 2019) (noting protected conduct is an element of a NFEPA retaliation claim). It appears resolution of this claim will require deciding whether the Nebraska courts would adopt a "manager rule" in the context of a retaliation claim under NFEPA. See Andrew J. Ruzicho et al., Employment Practices Manual § 6B:4 (Dec. 2020) (cleaned up) (An emerging trend in the courts is application of a "manager rule," which provides that a management employee who, in the course of her normal job performance, disagrees with or opposes the actions of an employer does not engage in protected activity.). When a claim raises novel issues of state law, we have determined that it is better to let the state courts decide the matter. EEOC v. Con-Way Freight, Inc., 622 F.3d 933, 938 (8th Cir. 2010); Birchem v. Knights of Columbus, 116 F.3d 310, 314 (8th Cir. 1997).

Additionally, once the district court remanded at least part of this case to the state court for its consideration, judicial economy and convenience no longer weighed in favor of the federal courts reaching this issue. Because the question of whether the "manager rule" applies under Nebraska law is one that powerfully implicates notions of comity, this is one of those rare cases in which the district court should have declined to exercise jurisdiction in order "to accommodate [Nebraska's] strong interest in interpreting its own [statute] and to guarantee a 'surer-footed reading' of the statute." Marianist Province of the United States v. City of Kirkwood, 944 F.3d 996, 1004–05 (8th Cir. 2019) (quoting United Mine Workers of Am. v. Gibbs, 383

U.S. 715, 726 (1966)). We vacate the district court's order on the NFEPA claim with instructions to remand the claim in its entirety to state court so that Nebraska courts may resolve the novel questions of state law.

## III. CONCLUSION

We affirm the district court's grant of summary judgment on Starkey's ADEA, COBRA/ERISA, Nebraska ADEA, and intentional infliction of emotional distress claims. We vacate the court's order pertaining to Starkey's NFEPA claim with instructions to remand the claim in its entirety[2] to state court.

_____

_____

[2]The NFEPA claim in its entirety includes the allegations against all the defendants based on Starkey's report of the Medicaid issues and HIPAA issues, her participation in NEOC activity, and her constructive discharge claim.