# United States Court of Appeals

### For the Eighth Circuit

_____

No. 22-3358

_____

Jason Storrs; Amber Smith,

*Plaintiffs - Appellants*,

v.

Travis Rozeboom, in his individual capacity; Preston Maas, in his individual capacity; Brian Malone, in his individual capacity,

*Defendants - Appellees*.

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: November 14, 2023
Filed: July 25, 2024

_____

Before COLLOTON,[*] WOLLMAN, and BENTON, Circuit Judges.

_____

[*]Judge Colloton became chief judge of the circuit on March 11, 2024. *See* 28 U.S.C. § 45(a)(1).

COLLOTON, Circuit Judge.

Jason Storrs and Amber Smith sued several police officers under 42 U.S.C. § 1983 after an incident in which the officers detained the plaintiffs to investigate a report of shoplifting. The district court granted summary judgment for the officers, and the plaintiffs appeal. We affirm in part, reverse in part, and remand for further proceedings.

I.

On December 26, 2019, Officers Rozeboom and Malone responded to a shoplifting in progress at Dick's Sporting Goods in Papillion, Nebraska. A police dispatcher informed the officers that the suspects—a black male and black female—drove away to the east in a silver four-door sedan.

When Malone received this information, he was near the store and saw what he thought was a silver four-door sedan traveling east. The driver was a black male, and a passenger was in the front seat. Malone notified others by radio that he had located a vehicle matching the dispatcher's description. He followed the car onto a highway and conducted a traffic stop. Rozeboom joined him.

Storrs was the driver of the vehicle. The officers approached, spoke with Storrs, and saw that his passenger, Smith, was a white female. Malone told Storrs about the shoplifting report. Storrs grew angry and asked what accusation Malone was making. Malone replied that "this goes really easy, either . . . you can all go in handcuffs right now or you can answer." Storrs yelled back, "What'd I do?" Malone instructed Storrs to turn off his car, and Storrs refused.

Malone asked Storrs if he "did" the shoplifting. Storrs yelled, "No, I did not, sir. I was picking my girlfriend up from work." Smith, the female passenger, called

-2-

Malone a "racist piece of crap" and accused him of harassment. Storrs continued to repeat that "this is bullshit." As Storrs and Smith continued to yell, Rozeboom radioed that they had pulled over a black male in a silver car, but that he was refusing to get out of the car. Malone again asked Storrs to turn off his car and then asked him to "have a conversation out here." Storrs refused.

Around this time, Officer Maas arrived on the scene to assist. Malone again asked Storrs to leave the vehicle and talk to him. Storrs accused the officers of racism, but nonetheless exited the car. Smith also got out and began recording the events on her phone. Malone asked Storrs to put his hands behind his back, and Maas instructed Storrs to turn around. Storrs did not comply. Maas asked him again to turn around. Storrs complied, and Maas twice told him to "wait right there." Storrs turned back around to face the officers, crossed his arms, and said, "No, I'm not under arrest." Maas asked him a third time to turn around because he was "being detained." Storrs insisted that he was not.

On hearing that Storrs was being detained, Smith stood directly in front of him, between Storrs and the officers. She demanded to know why he was being detained and asserted that the officers could not detain him. As she yelled, Maas twice asked her to "come this way," away from Storrs. When he asked a third time, he grabbed her arm to move her. Smith screamed and struggled. Storrs lunged toward Smith. Rozeboom tased Storrs. Storrs fell to the ground. Maas and Rozeboom restrained and handcuffed Storrs. As Smith continued recording, Malone grabbed her and pushed her against the car. Malone then brought Smith to the ground, restrained her, and handcuffed her.

The officers placed Storrs and Smith in separate squad cars. Maas spoke with Storrs, while Malone and Rozeboom tried to interview Smith. Smith declined to speak with them. Malone then noted for the first time that there was "a heavy odor of marijuana." Rozeboom replied, "Yeah, I keep getting that."

Malone and Rozeboom approached Maas and Storrs. Maas asked Storrs if there was anything in the car that did not belong to him. Storrs said that they could not go in his car. Maas explained that he "smell[ed] marijuana coming from you and the car," and asked if there was marijuana or anything that "shouldn't be" in the car. Storrs said, "No."

Rozeboom, Malone, and Maas then discussed how to proceed. Rozeboom acknowledged that Smith did not match the dispatcher's description, but said that an officer was heading to Dick's Sporting Goods to get an image of the shoplifters. Maas stated that there was probable cause to search the car in the meantime, and Malone interjected, "Yeah, there's an odor of marijuana." Maas agreed. Malone searched the car and a purse that he found inside the car. He told the other officers that he found nothing, "not even paraphernalia or drugs," although his written report later stated that he found "small pieces of marijuana" in the car.

Rozeboom then received a telephone call and learned that the shoplifting suspects were actually four black females. After running a records check on Storrs and Smith, the officers released them.

Storrs and Smith sued Rozeboom, Malone, and Maas, claiming that the officers violated their rights under the First, Fourth, and Fourteenth Amendments. The district court determined that the officers were entitled to qualified immunity on each claim and dismissed the action. We review the district court's decision on qualified immunity *de novo*, viewing the evidence in the light most favorable to the plaintiffs. To determine whether a police officer is entitled to qualified immunity, we ask (1) whether the facts alleged establish a violation of a constitutional or statutory right and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that his actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

II.

A.

Storrs and Smith first argue that the officers violated the plaintiffs' right to be free from unreasonable seizures by detaining them without reasonable suspicion. The plaintiffs originally argued that both the initial traffic stop and their continued detention was unreasonable. At oral argument, they abandoned their claim about the initial stop and focused solely on the continued detention.

The district court treated this claim as encompassing the initial stop only and not the continued detention. We conclude, however, that the plaintiffs adequately raised a claim regarding their continued detention. The complaint alleges both that "Malone effected a traffic stop of Storrs and Smith in the absence of reasonable suspicion" and that "[e]ach Defendant continued the detention after observing Smith and Storrs, at which time any objectively reasonable officer would have determined there was no basis for the detention to continue." R. Doc. 17, at 8 (emphasis added). The plaintiffs did not abandon this claim. They argued in the district court that an alleged odor of marijuana detected by officers after the initial stop did not justify the seizure.

"The Fourth Amendment requires that a search not continue longer than necessary to effectuate the purposes of an investigative stop." *United States v. Watts*, 7 F.3d 122, 126 (8th Cir. 1993). A seizure that is supported by reasonable suspicion must conclude if that reasonable suspicion dissipates. *Id.* The basis for the traffic stop here was a witness's description of suspected shoplifters as a black male and a black female in a four-door silver sedan. The officers had reasonable suspicion to stop the plaintiffs' vehicle because they observed a car that generally matched the description of the suspect vehicle with a black male driver and an unidentified passenger.

-5-

But after the officers stopped the vehicle and approached on foot, they could see that the passenger was a white female. It was then readily apparent that the passengers of the seized vehicle (one black person and one white person) did not match the description of the shoplifting suspects (two black persons). At that point, it was no longer reasonable for the officers to suspect that Storrs and Smith were the perpetrators in the shoplifting incident. The law clearly established that detention must be supported by reasonable suspicion, *see Delaware v. Prouse*, 440 U.S. 648, 654 (1979), and a reasonable officer would have known that no reasonable suspicion existed to continue detaining the pair for shoplifting after observing that Smith was white.

Although we conclude that the officers could not continue to detain Storrs and Smith based on reasonable suspicion of shoplifting, our analysis cannot end there. If the officers gained probable cause to believe that the plaintiffs committed a distinct offense while they were detained, the officers could then lawfully continue the detention. *See United States v. Sledge*, 460 F.3d 963, 966-67 (8th Cir. 2006); *see also United States v. Pickens,* 58 F.4th 983, 988-89 (8th Cir. 2023). In this case, the officers could resume a lawful detention once they had probable cause to believe that Storrs and Smith were obstructing a peace officer in violation of Nebraska law.

In Nebraska, a "person commits the offense of obstructing a peace officer, when, by using or threatening to use . . . physical interference, or obstacle, he or she intentionally obstructs, impairs, or hinders . . . the enforcement of the penal law or the preservation of the peace by a peace officer." Neb. Rev. Stat. § 28-906(1). Even interference with an unlawful detention can establish probable cause to believe that the interference violates § 28-906(1). *Sledge*, 460 F.3d at 966-67.

The officers here had probable cause to believe that Smith was obstructing a peace officer when she stood in front of Storrs and used "physical interference" to block his detention. A reasonable officer also could have concluded that there was

probable cause to believe that Storrs violated the statute. Evidence that a suspect resists handcuffing, struggles with an officer, and continues to resist restraint is alone sufficient to establish an offense. *State v. Ferrin*, 942 N.W.2d 404, 413 (Neb. 2020). After Storrs exited the vehicle, the officers instructed him to stay in place with his hands behind his back because he was "being detained." Storrs refused to comply. Instead, he crossed his arms, continued moving around, and repeatedly asserted that he was not being detained. A reasonable officer could have believed that there was probable cause to detain Storrs for obstructing a peace officer.

What remains of the unlawful detention claim, therefore, is the time between when the officers saw that Smith did not match the dispatcher's description and when an officer reasonably discerned probable cause to believe that Smith and Storrs were committing the offense of obstructing a peace officer. The officers do not raise on appeal other potential grounds for prolonging the detention, such as a traffic violation or the odor of marijuana, so those arguments must be raised in the district court if at all.

B.

The plaintiffs' next claim is that the officers arrested them without probable cause. Assuming without deciding that the plaintiffs were arrested, we already have concluded that a reasonable officer could have believed that there was probable cause to arrest the plaintiffs for obstructing a peace officer. The existence of probable cause to support an arrest forecloses a wrongful arrest claim. *See McCabe v. Parker*, 608 F.3d 1068, 1075 (8th Cir. 2010). An officer who reasonably believes in the existence of probable cause is entitled to qualified immunity. *Bernini v. City of St. Paul*, 665 F.3d 997, 1003 (8th Cir. 2012).

C.

Storrs argues that Rozeboom used excessive force by intentionally tasing Storrs in the groin. The district court assumed that intentionally tasing the groin would constitute a use of deadly force, but dismissed Storrs's claim because he lacked evidence that Rozeboom intentionally aimed at his groin.

Storrs asserts that he presented sufficient evidence of intent because he was hit in the groin and Rozeboom is a taser instructor. The video evidence, however, blatantly contradicts Storrs's assertion that Rozeboom aimed at his groin. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007). Before Rozeboom deployed the taser, red lights emitting from the taser were visible on Storrs's body as Rozeboom tried to aim. The lights moved around as Storrs moved. The lights never focused on Storrs's groin or otherwise suggested that the officer was aiming for that area of the body. That Rozeboom was trained to use a taser is insufficient to support an inference that he intentionally aimed at the groin. The video shows that Storrs was moving throughout the encounter, and there is no other indicium of an intentional strike to the groin. Rozeboom is thus entitled to summary judgment on this claim.

D.

The plaintiffs' next claim is that the officers allegedly retaliated against them for exercising their rights under the First Amendment. The First Amendment prohibits officials from retaliating against a citizen for exercising his right to freedom of speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). While that right "is settled at a high level of generality," to establish a violation in their "particular case," Storrs and Smith must present evidence that (1) they engaged in a constitutionally protected activity; (2) the officers took adverse action against them that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated in part by the plaintiffs' exercise of their constitutional rights. *Scott v.*

-8-

*Tempelmeyer*, 867 F.3d 1067, 1070 (8th Cir. 2017); *see Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014).

Smith argues that Maas and Malone retaliated against her for recording the encounter. She specifies that Maas grabbed her arm while she was recording; when she broke away from Maas and continued recording, Malone restrained and handcuffed her. Smith relies on our reference in *Chestnut v. Wallace*, 947 F.3d 1085 (8th Cir. 2020), to a "clearly established right to watch police-citizen interactions at a distance and without interfering." *Id.* at 1090.

In this case, however, the video evidence shows that Smith was close to the scene and interfering with the officers. As she recorded, Smith inserted herself between Storrs and the officers after the police advised Storrs that he was being detained. Smith cites no authority that she enjoyed a constitutional right to record a police encounter while interfering with an effort of the officers to carry out their duties. She thus cannot show that the officers violated a clearly established right when they arrested her for obstructing a peace officer.

Storrs's retaliation claim fails as well. He argues that Rozeboom tased him because he said that the officers were racists. As evidence of Rozeboom's motive, however, Storrs relies solely on the short period of time between his accusations and Rozeboom's deployment of the taser. Evidence of temporal proximity between the exercise of a constitutional right and an adverse action "alone is generally insufficient to raise a triable issue of material fact on retaliatory motive." *Flowers v. City of Minneapolis*, 558 F.3d 794, 800 (8th Cir. 2009); *see Wilson v. Northcutt*, 441 F.3d 586, 592-93 (8th Cir. 2006). Because Storrs cannot point to any other evidence of a retaliatory motive, and his intervening lunge toward Smith gave officers reasonable grounds to use force, we conclude that a jury could not reasonably find from the temporal proximity alone that Rozeboom's action was motivated by Storrs's speech.

The district court thus did not err by granting summary judgment for the officers on these claims.

## E.

The plaintiffs' final claim is that Malone and Maas conducted an illegal search of Storrs's vehicle and Smith's purse inside the vehicle. The officers argue that there was probable cause to search based on an odor of marijuana. *See United States v. Beard*, 708 F.3d 1062, 1065 (8th Cir. 2013). The record shows, however, that there is a genuine dispute about whether an odor was present. That factual dispute cannot be resolved by summary judgment.

Storrs and Smith assert that the officers could not have smelled marijuana because they had not smoked marijuana that day and their vehicle did not contain marijuana. The district court concluded that whether or not the officers truly smelled marijuana, Malone was entitled to qualified immunity because he reasonably relied on Maas's determination of probable cause. We reach a different conclusion because the video shows that Malone did not rely on Maas. Several minutes before Maas mentioned that there was probable cause to search the car, Malone told Rozeboom that he smelled marijuana. Then, when Maas stated that there was probable cause to search the car, Malone interjected, "Yeah, there's an odor of marijuana." This is not a case in which an assisting officer relied on the probable cause determination of an arresting or supervising officer. *Cf. Ehlers v. City of Rapid City*, 846 F.3d 1002, 1010 (8th Cir. 2017). Malone was the first officer on video to articulate the asserted basis for probable cause to search. Whether he or Maas perceived an odor of marijuana to support the determination is a disputed issue of fact. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252-53 (11th Cir. 2013).

-10-

\*       \*       \*

For these reasons, the judgment of the district court is affirmed in part and reversed in part.  We remand for further proceedings consistent with this opinion.

_____