# United States Court of Appeals

## For the Eighth Circuit

_____

No. 25-1361
_____

Ewan Leask

*Plaintiff - Appellant*

v.

City of Minneapolis; Jeffrey Pennaz, Minneapolis Police Officer, in his individual and official capacities

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: December 16, 2025
Filed: April 7, 2026
_____

Before LOKEN, SMITH, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

Two days after George Floyd's death, protestors gathered near the Minneapolis Third Precinct Police Department Headquarters. Some were violent, throwing rocks, water bottles, and other things at police officers. Officer Jeffrey Pennaz went to the Third Precinct's roof armed with a 40mm foam projectile launcher to monitor the situation.

Ewan Leask lived nearby and went to watch the protest. He stood in an AutoZone parking lot across the street from the Third Precinct and started recording with his phone. A large tree and a traffic light near the parking lot obscured him from Officer Pennaz's view. After Officer Pennaz saw protestors in the parking lot throw water bottles at officers, he fired a 40mm projectile in their direction. The projectile travelled about 178 feet through the air before striking Leask in the head. He suffered a laceration, which had to be stapled shut.

Leask sued Officer Pennaz and Minneapolis under 42 U.S.C. § 1983 and state tort law, asserting claims of excessive force under the Fourth Amendment, retaliation under the First Amendment, and negligence under Minnesota law. The district court[1] granted summary judgment to the defendants on the federal claims, finding no reasonable jury could find that Officer Pennaz intended to shoot Leask because the record conclusively established that he could not see Leask when he took the shot. The court declined to exercise supplemental jurisdiction over the state-law claims and dismissed them without prejudice.

We review a district court's grant of summary judgment *de novo*. *Gareis v. 3M Co.*, 9 F.4th 812, 818 (8th Cir. 2021). Summary judgment is appropriate where "there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law." *Id.* Typically, we view the facts in the light most favorable to the nonmoving party. *Shelter Ins. Cos. v. Hildreth*, 255 F.3d 921, 924 (8th Cir. 2001). But if there is a video of the event in question that clearly contradicts the nonmovant's version of events, we view the facts "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007); *Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010). We will affirm a grant of summary judgment only if, based on the evidence in the record, no reasonable jury could return a verdict for the nonmoving party. *Shelter Ins. Cos.*, 255 F.3d at 924.

---

[1]The Honorable Nancy E. Brasel, United States District Judge for the District of Minnesota.

We analyze qualified immunity in two steps: (1) whether Officer Pennaz violated one of Leask's constitutional rights; and (2) whether the right was clearly established on the day of the shooting. *See Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012). If the answer to either of these questions is "no," then Officer Pennaz is entitled to qualified immunity. *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019).

The Fourth Amendment claim against Officer Pennaz fails because the record does not show that Officer Pennaz seized Leask. *Dundon v. Kirchmeier*, 85 F.4th 1250, 1255 (8th Cir. 2023) ("To establish a Fourth Amendment violation, the claimant must demonstrate that a seizure occurred."). "A seizure requires the use of force *with intent to restrain*." *Torres v. Madrid*, 592 U.S. 306, 317 (2021). "Accidental force will not qualify." *Id.*; *see also Moore v. Indehar*, 514 F.3d 756, 760 (8th Cir. 2008) ("[B]ystanders are not seized for Fourth Amendment purposes when struck by an errant bullet in a shootout."). Leask claims that a jury could infer that Officer Pennaz intended to hit him from the fact that he was the one hit by the projectile. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1158 (11th Cir. 2005). But at the time of the shooting, Leask was about 178 feet away from Officer Pennaz. It is undisputed that the launcher's effective range is 131 feet. Leask's own expert testified it was "unlikely [Officer Pennaz] would be able to hit his intended target at that distance." Footage shows several people standing near Leask, and Officer Pennaz's body camera footage shows that he could not see Leask because of the tree and traffic light blocking his view. On this record, there can be no genuine dispute: Officer Pennaz didn't intend to hit Leask. *See Smith v. Rozeboom*, 108 F.4th 1064, 1070–71 (8th Cir. 2024).

Leask's First Amendment retaliation claim against Officer Pennaz fairs no better. To win, Leask "must show that [Officer Pennaz] singled out [Leask] from other protestors and that his First Amendment expression was the but-for cause of [Officer Pennaz's] decision to use force." *Keup v. Sarpy County*, 159 F.4th 533, 537 (8th Cir. 2025) (cleaned up). Leask argues that Officer Pennaz specifically targeted

him.  But, as we just explained, the record blatantly contradicts that assertion.  *Scott*, 550 U.S. at 380.

As for Leask's claims against Minneapolis, he argues that Minneapolis tacitly authorized or was deliberately indifferent to the violation of his constitutional rights.  But because Officer Pennaz didn't violate Leask's constitutional rights, "there can be no § 1983 or *Monell* liability for [Minneapolis]."  *Jones v. Faulkner County*, 131 F.4th 869, 876 (8th Cir. 2025) (citation omitted).

The only things left are Leask's state-law negligence claim against Officer Pennaz and vicarious liability claim against Minneapolis.  A district court may exercise supplemental jurisdiction over state-law claims when they "form part of the same case or controversy" as the federal claims.  *Starkey v. Amber Enters., Inc.*, 987 F.3d 758, 765 (8th Cir. 2021) (quoting 28 U.S.C. § 1367(a)).  But when all the federal claims are dismissed on a motion for summary judgment "the balance of factors to be considered under the supplemental jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will [usually] point toward declining to exercise jurisdiction over the remaining state-law claims."  *Id.* (cleaned up).  The district court did not abuse its discretion by declining to exercise supplemental jurisdiction.  *See id.* (standard of review).

Affirmed.

_____